IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KEITHA CHENAULT,

      Plaintiff,

vs.                                                                         No. CIV 97-1153 MV/DJS

BO THOMAS, City Manager of the
City of Hobbs, and SCOTT BUSSELL,
Director of Public Works of the City
of Hobbs,

      Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment, filed June 15, 1998 **[Doc. No. 15]**. The Court, having reviewed the pleadings and relevant law and being otherwise fully informed, finds that the motion is well taken and will be **granted**.

### Background

In this civil rights action focusing on the First Amendment Ms. Chenault, a long-time employee of the City of Hobbs, New Mexico, complains that Mr. Thomas instituted a policy in 1996 whereby city employees were to report to their supervisors any conversations they had with citizens "of stature." Ms. Chenault further alleges that she had a conversation on August 27, 1996 with Mr. Joe Harvey, former city manager of Hobbs and former state senator where Mr. Harvey inquired about water and utility matters and discussed family and employees.[1] Following this exchange Mr. Bussell

---

[1] In a deposition, Ms. Chenault testified as follows concerning the Harvey visit:
When Mr. Harvey came in, he was like I said, planning or discussing buying some land out North. Did it have water. Was the water good out there. Procedures on collecting a water sample. How are the kids. How's the job. Since I was City Manager there's been a lot of changes. A cup of coffee. Talking to other employees.

contacted Ms. Chenault, demanded to know the tenor of the conversation, and subsequently issued a written reprimand to Ms. Chenault for allegedly having violated the reporting policy.

On September 3, 1996 Ms. Chenault's attorney appeared before the Hobbs City Commission and requested clarification of the policy.[2] Although Ms. Chenault was present at the commission meeting, it is undisputed that she remained silent. Following this appearance, Ms. Chenault received another written warning admonishing her to follow the chain of command when complaining about the reporting policy. Two newspaper editorials appeared shortly thereafter, critical of the reporting policy. Subsequently, the City allegedly retaliated against Ms. Chenault by reassigning her from her duties in the utilities department, transferring her to a smaller office, assigning her "make-work" tasks and subjecting her to silent treatment. Ms. Chenault also claims that her supervisors gave her work to perform for which she had no qualifications. Finally, Ms. Chenault alleges that when her attorney mentioned the harassment to the Hobbs city attorney, Mr. Thomas suspended her for one day without pay under a pretextual motive.

Mr. Thomas and Mr. Bussell have answered by denying all allegations and by raising various affirmative defenses. With the parties having concluded discovery on April 17, 1998, Defendants timely filed their summary judgment motion.

In this motion Mr. Thomas and Mr. Bussell aver that their concern with the conversation between Ms. Chenault and Mr. Harvey was over the length of time Ms. Chenault spent with Mr. Harvey rather than performing her duties. Ms. Chenault claims the visit from Mr. Harvey lasted less

---

[2] Ms. Chenault's counsel's statement before the commission, too lengthy to reproduce here, centers around a request for clarification of Mr. Thomas' policy of requiring employees to notify their department heads if they have contact with persons of "stature," which Mr. Thomas defines as commissioners, state department heads, state elected officials, and local business people. Mr. Chenault's counsel requested to know who is on the list of people of stature, what instructions and policy there should be for employees upon encountering such persons, and what priority, as between doing their work and reporting to managers, should employees follow in the case of contact.

than two hours, and Mr. Bussell and Mr. Thomas state that it lasted from two to four hours. Defendants also aver that since Ms. Chenault's counsel spoke at the commission meeting not in his representative capacity, the speech at issue was not Ms. Chenault's, that the speech taken as a whole was not a matter of public concern, and that the interests of the City of Hobbs in maintaining an efficient and productive work force outweigh Ms. Chenault's rights under the First Amendment. Lastly, Defendants argue that even if the Court finds a protected interest in the conduct at issue, they are entitled to qualified immunity.

## Discussion

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Under this standard, the moving party initially carries the burden of pointing out to the trial court that there is an absence of evidence to support the nonmoving party's case, although the moving party "need not affirmatively negate the nonmovant's claim in order to obtain summary judgment." Allen v. Muskogee, Oklahoma, 119 F.3d 837, 840 (10th Cir. 1997), cert. denied, 118 S.Ct. 1165 (1998), citing Celotex v. Catrett, 477 U.S. 317, 322-23, 325 (1986). The Court examines the factual record and all reasonable inferences therefrom in the light most favorable to the nonmoving party, Allen, 119 F.3d at 839-40, and materiality of facts in dispute, if any, is dependent upon the substantive law, id. at 839, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the movant has met this burden, Rule 56 requires the nonmovant to go beyond the pleadings and show, through affidavits, depositions, answers to interrogatories, and the like that there is a genuine issue for trial. Allen, 119 F.3d at 841, citing Celotex, 477 U.S. at 324; see

also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1988).  Summary judgment "is warranted only if the uncontroverted material facts establish that the moving party is entitled to judgment as a matter of law."  David v. City and County of Denver, 101 F.3d 1344, 1355 (10th Cir. 1996), cert. denied, 118 S.Ct. 157 (1997).

Although the time is long past when a public employee had to choose between staying employed and enjoying First Amendment rights, see Connick v. Myers, 461 U.S. 138, 143-144 (1983), a public employee's freedom of speech is not unlimited under modern jurisprudence.  Courts must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  Pickering v. Board of Education, 391 U.S. 563, 568 (1968).

The first task in determining whether an employer's actions infringe on an employee's First Amendment rights is to ascertain if the speech at issue can be "fairly characterized as constituting speech on a matter of public concern."  Connick, 461 U.S. at 146; see also David, 101 F.3d at 1355. Considering an employee's motive in speaking out, courts must weigh the content, form and context of the speech in light of the whole record before them.  David, 101 F.3d at 1355. In drawing the line between public and private speech, the Tenth Circuit looks to allegations of impropriety or malfeasance in that speech, where such allegations weigh in favor of protected speech.  See id. at 1357; Schalk v. Gallemore, 906 F.2d 491, 495 (10th Cir. 1990); Wulf v. City of Wichita, 883 F.2d 842, 857 (10th Cir. 1989); Conaway v. Smith, 853 F.2d 789, 796 (10th Cir. 1988); Koch v. City of Hutchinson, 847 F.2d 1436, 1445 (10th Cir. 1988), cert. denied, 488 U.S. 909 (1988).

Examining the whole record here shows that the speech in question is not one of public

concern.  By her own admission Ms. Chenault's first instance of speech for which her superiors disciplined her, a conversation with Mr. Harvey, touched on a land purchase Mr. Harvey was contemplating, family matters, and reminiscences of the time when Mr. Harvey was a part of local government.  The second instance of speech which led to this litigation was the lengthy inquiry Ms. Chenault's attorney made at a meeting of the Hobbs City Commission while speaking on her behalf.  There he both sought a clarification and was implicitly critical of the vagueness of the reporting policy.  Nowhere did Ms. Chenault bring forth, however, either personally or through her attorney, any allegations of misconduct or malfeasance on the part of the city government.

Moreover, Ms. Chenault's motives in her speaking distinctly appear to be personal.  Ms. Chenault explained in her deposition that she has been having problems with her employment at the city since December 1995, and that she felt as far back as January 1996 that her supervisors were trying to force her to leave.  During a meeting with personnel director Fran Mosher, Ms. Chenault discussed the Harvey incident but also focused on her work load and friction with Defendant Bussell.  In examining Ms. Chenault's motive, Workman v. Jordan, 32 F.3d 475, 483 (10th Cir. 1994), cert. denied, 514 U.S. 1015 (1995), the Court concludes, therefore, that in her conflicts over the reporting policy Ms. Chenault was airing a grievance of a personal nature that was a continuation of earlier dissatisfactions in the workplace.

Ms. Chenault mistakenly places great reliance on Czurlanis v. Albanese, 721 F.2d 98 (3rd Cir. 1983), arguing that as in her case, Mr. Czurlanis was chastised in derogation of his First Amendment rights for not heeding his employer's chain of command and bringing complaints directly to his local governing body.  Czurlanis does not help Ms. Chenault, however.  Not only is Czurlanis not controlling in this circuit, but the allegations of malfeasance that Mr. Czurlanis brought in his case,

id. at 104, squarely fall within this Court's reading of Tenth Circuit precedent and are in marked contrast to the nature of Ms. Chenault's speech in this instance.

The Court emphasizes that it is not considering here the validity of the reporting policy. For while "even speech that focuses on internal employment conditions and is made in the context of a personal dispute may be regarded as pertaining to a matter of public concern if it addresses important constitutional rights which society at large has an interest in protecting," Woodward v. City or Worland, 977 F.2d 1392, 1404 (10th Cir. 1992 ), cert. denied sub nom. Woodward v. Seghetti, 509 U.S. 923 (1993), Ms. Chenault has not challenged the policy in this litigation, and neither party has briefed the issue for this Court. The policy itself, therefore, is not part of the controversy which this Court now decides.

Because the uncontroverted facts before the Court show that Ms. Chenault's statements can not be fairly characterized as constituting speech on a matter of public concern, the Court will grant Defendants' motion.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　MARTHA VÁZQUEZ
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

August 19, 1998


Counsel for Plaintiff　　　　　　　　　　　Counsel for Defendants
C. Barry Crutchfield , Esq.　　　　　　　　Gregory L. Biehler , Esq.